UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>TERRY HALL )<br>) | CR. NO. 07-318 (EGS) |

**DEFENDANT'S MOTION FOR LEAVE TO LATE FILE BY FORTY MINUTES HIS MOTION FOR DEFENDANT'S RELEASE**

Defendant, Terry Hall, through undersigned counsel, respectfully moves the Court to grant his Motion to Late File By Forty Five Minutes his Motion for Defendant's Release. As grounds for this Motion undersigned states:

1. In court on December 12, 2007, Mr. Hall indicated his intent to file a motion for his release. In order for Mr. Hall's motion to be heard quickly, this Court set a deadline of 4 p.m. on December 13 by when Mr. Hall's motion is due.

2. Due to obligations in connection with a couple of court appearances on December 13 and due to the need for a little additional time to verify certain information contained in Mr. Hall's motion for release, Mr. Hall is requesting permission to file his Motion for Defendant's Release approximately 45 minutes late.

WHEREFORE, undersigned counsel respectfully moves the Court to grant his Motion for Leave to Late file By Forty Five Minutes his Motion for Defendant's Release.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Tony W. Miles
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>TERRY HALL ) | CR. NO. 07-318 (EGS) |

**ORDER**

That upon consideration of defendant's Motion for Leave to Late File By Forty Five Minutes, it is hereby ordered that Defendant's Motion is hereby **GRANTED**.

**SO ORDERED**

_____
Emmet G. Sullivan
UNITED STATES DISTRICT JUDGE

_____
DATE

**IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| v. | ) | CR. NO. 07-318 (EGS) |
| **TERRY HALL** | ) | |

**MOTION FOR DEFENDANT'S RELEASE**

Terry Hall, by and through counsel, respectfully moves this Court to release him while his case is pending trial.

**BACKGROUND**[1]

Mr. Hall was arrested on November 15, 2007 in the Northern District of Georgia based on a complaint originating in the United States District Court for the District of Columbia which charged him with bribery in violation of 18 U.S.C. § 201. After his arrest, Mr. Hall appeared in the United States District Court for the Northern District of Georgia and, on November 20, 2007, he was ordered to be released by Chief Magistrate Judge Gerrilyn G. Brill. Because the government indicated its intent to appeal Judge Brill's release order, Judge Brill granted a twenty four hour stay of her release order.

Also on November 20, 2007, a grand jury sitting in the District of Columbia returned an indictment against Mr. Hall charging him with one count of bribery in violation of 18 U.S.C. § 201. As a result of this indictment, Mr. Hall's case has been assigned to this Court. At some point, the government moved this Court to stay and revoke the release order issued by Judge Brill. This Court granted the government's Motion to Stay and Mr. Hall was transported for purposes of appearing

---

[1]Because much of the background discussed here occurred in Georgia and occurred prior to the date on which the Federal Public Defender in the District of Columbia became involved in this case, undersigned counsel relies largely on government representations in this section.

before the United States District Court for the District of Columbia.

Mr. Hall first appeared in the United States District Court for the District of Columbia on December 5, 2007 before Magistrate Judge John M. Facciola. Mr. Hall has also made subsequent appearances before this Court on December 7, 2007 and December 12, 2007. At these appearances, Mr. Hall raised issues concerning his release and, as discussed in open court, undersigned counsel is filing this instant motion in support of Mr. Hall's release.

## ARGUMENT

Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors such as community safety and the likelihood of flight in making release determinations. In passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code Section 3142(j). Significantly, Courts have recognized that the statutory scheme of Section 3142 continues to favor release over pretrial detention. See United States v. Orta, 760 F.2d 887, 890-892 (8th Cir. 1985); United States v. Miller, 625 F. Supp. 513, 516-17 (D.Kan. 1985).

With regard to dangerousness, the Bail Reform Act bespeaks a recognition that "there is a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis supplied). Considering that Mr. Hall has no prior convictions and considering that the allegations in the instant case do not involve violence

or any threats of violence, Mr. Hall is clearly not part of this "limited group." Indeed, based on all arguments about which undersigned counsel is aware the government has made in support of its request for detention, the government appears to concede that Mr. Hall will not pose a danger to the community if released.

Since there is no legitimate question concerning community safety, the critical issue regarding Mr. Hall's release status is risk of flight. The government has raised some concern that Mr. Hall may flee the United States if released. The government appears to base its concern on Mr. Hall's previous work in foreign countries and alleged assets he has accumulated over the years. When reviewing Mr. Hall's back ground and recent conduct, however, it is clear that the government's concerns are completely without merit.

Mr. Hall's primary ties have always been with the United States and his ties to foreign countries has been merely in connection with his military service or his involvement with private companies which contract with the United States military. Mr. Hall was born and raised in the state of Georgia. Mr. Hall attended elementary school, junior highschool and highschool in the state of Georgia. Mr. Hall graduated from highschool in Reidsville, Georgia in 1984. Immediately after graduating highschool, Mr. Hall offered his service to the United States by joining United States Army in 1984. He served until 1987 and was discharged honorably. At that point, Mr. Hall moved back to Georgia and worked as a machine operator for about eight months. After his employment as a machine operator, Mr. Hall decided to continue his education and he enrolled in a community college in the state of Georgia. While attending school in Georgia, Mr. Hall also joined the Georgia

National Guard.[2]

In an effort for a better future and career, Mr. Hall rejoined the United States Army in 1990. It was through his service in the Army that first provided Mr. Hall with the opportunity to travel to foreign countries. In addition to being stationed at various places in the United States, Mr. Hall was stationed in the Middle East and Europe as part of his Army service. In fact, Mr. Hall served in the first Gulf War and he earned numerous awards in relation to his service in the Gulf War. Mr. Hall received two bronze stars and various campaign ribbons. Mr. Hall suffered injuries during the Gulf War and he was ultimately medically discharged under honorable conditions from the Army in 1997.[3]

After his discharge in 1997, Mr. Hall returned to the United States. At this point, Mr. Hall was residing in the United States and he worked in the United States. With the exception of an approximate one year period of employment with Kellogg, Brown and Root (KBR), Mr. Hall remained in the United States working for various employers.[4]

Mr. Hall gained employment with KBR again in 2002 working in the area of food service. Mr. Hall moved from Georgia to Kuwait due to his employment with KBR. In 2004, Mr. Hall started a company in Georgia. Because the primary function of Mr. Hall's Georgia based company

---

[2]Undersigned counsel was able to verify the information contained in this paragraph through either Mr. Hall's sister Andrea Hall or his cousin Ron Hall or both.

[3]With the exception of Mr. Hall's bronze stars and campaign ribbons, the information in this paragraph has been verified by Ron Hall.

[4]Mr. Hall worked at such places as the Census Bureau, the Bureau of Prisons and a fast food restaurant. Mr. Hall's cousin, Ron Hall, was aware of that Mr. Hall worked in the United States during this period and is only able to specifically recall Mr. Hall's employment at the Bureau of Prisons.

was to provide assistance to the United States military overseas, Mr. Hall continued residing in the Middle East after starting this company. Mr. Hall resided in the Middle East until earlier this year when he discontinued his overseas business operations. Mr. Hall returned home to the state of Georgia to pursue local business ventures. Mr. Hall is now well settled back in his home state of Georgia and he intends to remain in Georgia.[5]

In addition to the deep rooted historical ties discussed above, Mr. Hall's strong ties to Georgia are evidenced by the address listed on his identification documents, the family members he has residing in Georgia as well as the property and business interests he has in the state of Georgia. Mr. Hall's current driver's license was issued by the state of Georgia and the address connected with his confiscated passport is a Georgia address.[6] Mr. Hall has a son and a sister who live in Georgia.[7] Mr. Hall also has aunts, uncles and cousins residing in Georgia.[8] Even according to the government's affidavit in support of the search warrant for Mr. Hall's home, bank records tie Mr. Hall to his residence in the state of Georgia and his Georgia residence is the business address for one

---

[5] In fact, Mr. Hall's cousin, Ron Hall, advises that Mr. Hall shipped is property from the Middle East back to the United States and Mr. Hall's property arrived at the port in Savannah, Georgia in September of this year. This property included such significant items as an automobile and Ron Hall recalls assisting Mr. Hall with obtaining the property from the Savannah port.

[6] In fact, Mr. Hall was arrested in connection with the instant case near his place of residence in Georgia while he was on his way to attend a concert. Additionally, according to an affidavit in support of a search warrant for Mr. Hall's residence, law enforcement has verified that Mr. Hall does indeed have a residence in the state Georgia.

[7] Mr. Hall also has another son in the state of Texas.

[8] In fact, undersigned counsel has been advised that one of Mr. Hall's cousins was present during his detention hearing in the District Court in Georgia and that this cousin was actively involved in the process.

of Mr. Hall's companies.[9] It is also undisputed that Mr. Hall owns property in the state of Georgia.

With such strong ties to the United States, and to Georgia in particular, Mr. Hall is clearly not a person who will flee the United States if released. The best indication of Mr. Hall's intent not to flee is how he has acted for the past several months will full knowledge that the government was investigating him. For at least one year, Mr. Hall has been aware of the publicity surrounding the government's investigation and he has been aware of indictments which have been returned as a result of this investigation. With this knowledge, Mr. Hall had no problem entering the United States from a foreign country in March of this year. During this entry, Mr. Hall's laptop computer was seized by the government and the government now asserts that much of the evidence against Mr. Hall was recovered from this laptop computer. A few months after the seizure of his computer, Mr. Hall traveled abroad for the purposes of winding down his business affairs overseas and finalizing his permanent relocation back to the United States rather than to flee or avoid prosecution. At a point when Mr. Hall was in a great position to do what the government claims it fears (i.e. flee to a foreign country and be supported by his assets), Mr. Hall actually returned to the United States and had his personal property delivered to the United States. While in the United States, Mr. Hall has consistently lived at residences which are traceable to him and at residences in which he can be easily found**.**

Based on Mr. Hall's strong ties to the United States and based on his recent conduct, the government's assertions regarding Mr. Hall 's flight risk lack any credible support. Significantly, the government is unable to point to any specific evidence which shows that Mr. Hall has an intent

---

[9]Undersigned counsel also understands that Mr. Hall owns a second company which is based in Georgia.

to flee. For example, the government has not alleged that it is aware of any statements made by Mr. Hall indicating a desire to flee if prosecuted.[10] The government has also not alleged that it is aware of any suspicious activity which appears specifically designed to facilitate Mr. Hall's flight.[11] Rather than rely on credible evidence indicating potential flight, the government appears to base its flight risk argument solely on speculation relating to how Mr. Hall could theoretically utilize his resources.

Although there has been some dispute between the parties involving the extent of Mr. Hall's financial resources and his ability to access his resources, it is clear that those who choose to flee and fail to appear in court as required will do so despite their economic status. Regardless of Mr. Hall's economic condition, his background and conduct indicate that he will not flee the country and that he will appear in court when required. If the court has any concern regarding flight, these concerns can be alleviated by placing upon Mr. Hall suitable reporting and monitoring conditions. Such conditions can include regular reporting requirements, home confinement with electronic monitoring and even imposition of a Global Position Satellite (GPS) on Mr. Hall's person in order to have twenty four hour surveillance of his specific whereabouts.[12]

---

[10] The government has a variety of resources through which (and through whom) it purports to have access to statements made by Mr. Hall. One such resource with whom the government claims to have access are cooperating witnesses who have allegedly had frequent contacts with Mr. Hall. Other resources available to the government include access to all information contained on Mr. Hall's laptop computer and access to statements Mr. Hall has made by e-mail to various individuals.

[11] For instance, the government claims to have access to Mr. Hall's bank accounts and they have offered no evidence to suggest that there has been any activity in Mr. Hall's accounts which would indicate his desire to flee or which would suggest that he has made any effort to facilitate his flight.

[12] In the Northern District of Georgia, both pretrial supervision and post sentencing supervision are conducted by the United States Probation Office. Undersigned counsel had an opportunity to speak with United States Probation Officer Mark Davis in the Northern District of Georgia and Mr. Davis advised counsel that all of these supervision options are available in the

Based on the reasons stated in this motion, as well as any additional reasons which may be raised at Mr. Hall's bond hearing, pursuant to 18 U.S.C. § 3142, this Court is required to release Mr. Hall under the "least restrictive" condition or combination of conditions that the Court determines will reasonably assure the safety of the community and Mr. Hall's appearance in court. In order to satisfy the court's statutory obligations, Mr. Hall requests that he be released to live at his residence in the Northern District of Georgia under the least restrictive conditions necessary to assure his appearance in court.

WHEREFORE, for these reasons and any such reasons that shall appear to the Court, the defendant, Terry Hall, respectfully requests that his motion be granted.

Respectfully Submitted,

A.J. KRAMER
Federal Public Defender


_____/s/_____
Tony W. Miles
Assistant Federal Public Defender
625 Indiana Avenue, N.W., #550
Washington, D.C. 20004
(202) 208-7500

---

Northern District of Georgia.