UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO. 07-318 (EGS) |
| | ) | |
| TERRY HALL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR RELEASE

The Government respectfully submits this memorandum in opposition to the motion of the defendant Terry Hall ("Hall") for release. As explained below, because Hall has utterly failed to overcome the Government's showing that Hall is a serious flight risk, Hall's motion should be denied.

Background

On November 15, 2007, federal law enforcement agents, acting on a warrant issued by a U.S. Magistrate Judge in this District, arrested Hall in a suburb of Atlanta, Georgia. The warrant issued on the basis of a criminal complaint charging Hall with violating 18 U.S.C. § 201(c). On November 20, 2007, Hall was indicted for violating 18 U.S.C. § 201(b)(1)(A)[1] in connection with payments offered and made to a U.S. military contracting officer at Camp Arifjan, Kuwait, in connection with millions of dollars worth of contracts for the purchase of bottled water from companies controlled by Hall. Later the same day, a U.S. Magistrate Judge in the Northern District of Georgia ordered that

---

[1] In pertinent part, section 201(b)(1)(A) makes it a crime to "corruptly give[], offer[], or promise[] anything of value to a public official …with intent to influence any official act …"

Hall be released on the basis of a $100,000 corporate surety bond. The Magistrate Judge temporarily stayed her release order to allow this Court to consider the issue.

On December 7, 2007, after hearing oral argument from the parties, this Court revoked the order releasing Hall on bond. Stating that it had reviewed the matter de novo, the Court found that: (1) Hall had very substantial financial means and the ability to support himself abroad; (2) Hall was a significant risk of flight to Kuwait, a country with whom the U.S. has no extradition treaty; and (3) Hall had no ties whatsoever to the District of Columbia and insubstantial ties to other judicial districts in the United States.

In its submissions to the Court. the Government has demonstrated that: Hall has for the past five years lived in Kuwait, where he received over $20 million from the U.S. Government in connection with military contracts that are tainted by the bribery of three different contracting officers; Hall controlled numerous bank accounts in Kuwait and elsewhere overseas; as of August 31, 2007, Hall had balances totaling over $500,000 in various international and domestic bank accounts that he either controls or to which he has access; that he has $1.5 million in trust accounts for each of his children; he has interests in real estate valued at over $3 million; his family ties in the U.S. are weak; he has used an alias in his e-mail communications; that agents executing a search warrant at a house Hall owns in Georgia found his bank records in a shredder; and in a previous proceeding, he made serious misrepresentations and omitted material facts in required disclosures to pretrial services concerning his financial and business activities, including that he had two domestic bank accounts containing only $8,000.

In support of his present motion for release, Hall argues that he is not a flight risk because a few months after his laptop was seized, he discontinued his overseas business

2

activities and "permanently relocated" to the State of Georgia, where he purportedly has extensive family and business ties and is pursuing "local business ventures." Defendant's Motion for Release at 6-8. The record belies these assertions. Moreover, Hall ignores the substantial evidence of his overseas bank accounts, which were one of the central bases for the Court's detention order.

Hall would have this Court believe that last spring he severed his overseas business ties and resettled in the State of Georgia. Like other representations Hall has made to judicial authorities, this statement is demonstrably false. Hall's passport reflects that in the months after law enforcement seized his laptop on March 17, 2007, he traveled overseas extensively. For example, Kuwaiti immigration authorities stamped his passport five times in May 2007 and once in June 2007. Immigration authorities from the United Arab Emirates stamped his passport twice in May 2007, four times in June 2007, and once in July 2007. Philippines immigration authorities stamped Hall's passport twice in June 20007 and once in July 2007. Significantly, in 2006, Hall established bank accounts for two Army contracting officers in the Philippines and transferred bribe money to those accounts.

A preliminary review of Hall's bank records indicates that, during this same period, bank accounts Hall controls received substantial wire transfers from overseas, including: $32,000 from an account in Djibouti on July 6, 2007; $100,000 from an account in the Cayman Islands on July 27, 2007; $100,000 from an account in the Cayman Islands on September 13, 2007; $40,000 from an account in the Cayman Islands on September 13, 2007; $77,890 from an account in the Cayman Islands on October 7, 2007; and $110,000 from an account in the Cayman Islands on October 13, 2007. This is

not the sort of conduct one would expect from an individual who has severed his overseas business ties and is now engaged in purely "local business ventures."

Regarding his residence, Hall claims that he has "settled back in" to his "home state." Defendant's Motion for Release at 6. In fact, Hall has led an itinerant existence over the past six months. As his pretrial services report reflects, since June 2007 Hall has stayed at several different residences and hotels. He has been evicted from the house that he was renting starting in August. As for his family ties, Hall now asserts that numerous family members tying him to Georgia. Hall neglects to mention that he informed pretrial services that he maintains a relationship with only one of those family members, and that when contacted by law enforcement this individual professed not to know where hall resided.

Conclusion

For the reasons set forth above and in the Government's previous submissions, the Government respectfully requests that the hall's motion for release be denied.

Dated this 18th day of December 2007.

                                        Respectfully submitted,
                                        WILLIAM M. WELCH II
                                        Chief
                                        Public Integrity Section


By:    _____/s/
           PETER C. SPRUNG
           Trial Attorney
           Public Integrity Section
           Criminal Division
           U.S. Department of Justice
           1400 New York Avenue, NW, Suite 12100
           Washington, D.C. 20005


CERTIFICATE OF SERVICE

      I hereby certify that, on December 17, 2007, I served a copy of the Government's Memorandum in Opposition to the Defendant's Motion for Release via the Electronic Case Filing System on the party indicated below.

                                              _____/s/
                                              PETER C. SPRUNG
                                              Trial Attorney

Dated:       Washington, D.C.
                December 17, 2007

Tony Miles
Assistant Federal Public Defender
625 Indiana Ave., NW #550
Washington, D.C. 20004
Counsel for Terry Hall