IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| v. ) | CR. NO. 07-318 (EGS) |
| TERRY HALL ) | |

### MOTION TO RECONSIDER DEFENDANT'S DETENTION

Terry Hall, by and through counsel, pursuant to 18 U.S.C. § 3142, respectfully moves this Court to reconsider its previously imposed order of detention and fashion conditions of release for Mr. Hall.

### BACKGROUND[1]

Mr. Hall was arrested on November 15, 2007, in the Northern District of Georgia based on a complaint originating in the United States District Court for the District of Columbia which charged him with bribery in violation of 18 U.S.C. § 201. After his arrest, Mr. Hall appeared in the United States District Court for the Northern District of Georgia and, on November 20, 2007, he was ordered to be released by Chief Magistrate Judge Gerrilyn G. Brill. Because the government indicated its intent to appeal Judge Brill's release order, Judge Brill granted a twenty four hour stay of her release order.

Also on November 20, 2007, a grand jury sitting in the District of Columbia returned an indictment against Mr. Hall charging him with one count of bribery in violation of 18 U.S.C. § 201. As a result of this indictment, Mr. Hall's case has been assigned to this Court. At some point, the government moved this Court to stay and revoke the release order issued by Judge Brill. This Court

---

[1] Because much of the background discussed here occurred in Georgia and occurred prior to the date on which the Federal Public Defender in the District of Columbia became involved in this case, undersigned counsel relies largely on government representations in this section.

granted the government's Motion to Stay and Mr. Hall was transported for purposes of appearing before the United States District Court for the District of Columbia.

Mr. Hall first appeared in the United States District Court for the District of Columbia on December 5, 2007 before Magistrate Judge John M. Facciola. Mr. Hall has also made subsequent appearances before this Court on December 7, 2007, and December 12, 2007. At these appearances, Mr. Hall raised issues concerning his release. Mr. Hall followed up his oral requests for release by filing a written motion for release on December 13, 2007. In Mr. Hall's motion for release, he argued that, because he does not pose a risk of flight, he should be released pending trial.[2] Mr. Hall noted his strong historical ties to the United States and his service to the United States military. Mr. Hall also discussed his residency in the state of Georgia at the time of his arrest and his intent to remain in Georgia. Mr. Hall discussed the strong family ties he has in Georgia and the property interests he had in the state. Mr. Hall further noted that, prior to his arrest, he remained visible and available to the government and that he even relocated back to the United States despite having knowledge of the investigation against him.

On December 17, 2007, the government filed an opposition to Mr. Hall's motion for release. In its opposition, the government argues that Mr. Hall's request for release should be denied because Mr. Hall has failed to "overcome the Government's showing that Hall is a serious flight risk."[3]

---

[2]Because the government had based its request for detention on the theory that Mr. Hall is a risk of flight, Mr. Hall addressed the issue of dangerousness only briefly in his motion.

[3]Because undersigned counsel is unaware of any finding made by this Court at the time of the government's Opposition that Mr. Hall was a serious flight risk, Mr. Hall asserts that the government inappropriately attempted to shift the burden to Mr. Hall for purposes of his bail proceedings. Elsewhere in its Opposition, the government states that this court had entered an order of detention with regard to Mr. Hall. However, court records indicate that this Court had never entered such an order at the time the government filed its Opposition. The only action taken by this

2

Government's Opposition to Defendant's Motion for Release at 1. The government indicates that it bases its flight risk argument on the notion that Mr. Hall had resided in Kuwait for five years; that Mr. Hall received millions of dollars from the United States government in connection with military contracts in which the government alleges are tainted by acts of bribery; that Mr. Hall has large sums of money in domestic and international bank accounts; that Mr. Hall has other financial resources such as property and trust accounts for his children; and that Mr. Hall's ties to the United States are weak. In its Opposition, the government attempts to discredit Mr. Hall's claim that he had reestablished ties to the United States at the time of his November 2007 arrest by claiming that Mr. Hall had traveled overseas as recently as July of 2007 and that deposits were made into bank accounts allegedly controlled by Mr. Hall from overseas wire transfers through October 13, 2007.

On December 18, 2007, Mr. Hall filed a reply to the Opposition which the government filed on the previous day. In his Reply, Mr. Hall makes several arguments challenging many of the government's allegations and conclusions. For instance, Mr. Hall argues that the government's contention that Mr. Hall had traveled overseas up to July of 2007 corroborates Mr. Hall's assertion that he was relocating back to the United States because the government has demonstrated that Mr. Hall had not traveled overseas during the four months which preceded his arrest. Mr. Hall also notes that the government has been relying on information which is stale and inaccurate when claiming that Mr. Hall has significant assets in foreign bank accounts.

A bond hearing was conducted before this Court on December 18, 2007. At the hearing, the government acknowledged that it is seeking Mr. Hall's pretrial detention solely on the basis that the

---

Court with regard to Mr. Hall's detention was to stay the release order imposed by a United States Magistrate Judge in the Northern District of Georgia and to have Mr. Hall remanded to the District of Columbia for further proceedings.

government believes that Mr. Hall poses a risk of flight. At the conclusion of the hearing, this Court denied Mr. Hall's motion for release and Mr. Hall remained in custody.

Issues concerning Mr. Hall's detention were again discussed at a status hearing which was held on February 1, 2008. As a result of the discussion, this Court ordered the government to file a memorandum of law which discusses whether a criminal defendant can be lawfully detained pretrial based solely on risk of flight. The government filed its Memorandum of Law Concerning Detention and reported that "risk of flight alone is an adequate and independent basis for pre-trial detention without regard to any danger the defendant may pose to the community." Government's Memorandum of Law Concerning Detention at 1. Mr. Hall filed a response to the government's memorandum of law. In his response, Mr. Hall stressed that case law indicates that pretrial detention based solely on risk of flight is an extreme measure which shall occur rarely. Mr. Hall further noted that case law states that pretrial detention based simply on a finding that a defendant has the ability and means to flee is improper. Mr. Hall argued that, because his pretrial detention is based solely on the notion that he has the ability and means to flee, his detention in this case is unlawful. After reviewing the government's memorandum of law and Mr. Hall's response, this Court again denied Mr. Hall's request for release at a status hearing which was held on February 27, 2008.

## ARGUMENT

As previously discussed by Mr. Hall, the Bail Reform Act strongly favors pretrial release over pretrial detention. See United States v. Orta, 760 F.2d 887, 890-892 (8th Cir. 1985); United States v. Miller, 625 F. Supp. 513, 516-17 (D.Kan. 1985). In fact, in this Circuit, the Court of Appeals cautioned that "[d]etention until trial is relatively difficult to impose." United States v. Singleton, 182 F.3d 7, 9 (D.C. Cir. 1999). Significantly, any "[d]oubts whether [bail] should be

granted or denied should always be resolved in favor of the defendant." Herzog v. United States, 75 S.Ct. 349, 351 (1955).

In Mr. Hall's case, because the government has only shown an opportunity to flee rather than showing any facts which would indicate that Mr. Hall will in fact flee if released, his pretrial detention is unlawful. Detention on such a basis is unlawful because "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." United States v. Himler, 797 F.2d 156 (3d Cir. 1986); see also United States v. Xulam, 84 F.3d 441, 444 (D.C. Cir. 1996) (the notion that those supervising and monitoring a defendant who ultimately chooses to flee could not stop him from fleeing is true for every defendant and this is "not the standard authorized by law for determining whether pretrial detention is appropriate").

The information and evidence submitted by the government to support its request for pretrial detention in this case is seriously lacking. The government has presented no evidence that Mr. Hall has expressed an intent to flee if prosecuted and the government has offered no evidence indicating that Mr. Hall has acted in a way to suggest that has made any preparations for flight.[4] Moreover, there is nothing in Mr. Hall's background to suggest that he is a person with a propensity to flee.[5]

The information provided by the government only suggests that Mr. Hall has the ability to

---

[4] The government has had tremendous opportunity to become aware of any flight related statements or conduct in which Mr. Hall participated. In March of 2007, the government seized Mr. Hall's laptop computer and other devices on which documents are stored. The government has also seized other items and documents in connection with the execution of at least three search warrants at private residences in Georgia and Texas. Additionally, the government claims that it is working with cooperating witnesses who have had frequent contacts with Mr. Hall and the government has worldwide access to financial accounts which they allege are associated with Mr. Hall.

[5] For example, Mr. Hall has never previously failed to appear for a court proceeding and Mr. Hall has never been suspected of any passport fraud type offense.

flee the country if released and that he has the means to survive abroad. In an effort to support its position that Mr. Hall has the ability to flee, the government focuses on Mr. Hall's financial situation. The government claims that, if released, Mr. Hall could easily flee the country due to his wealth. The government asserts that Mr. Hall has valuable property in the United States and that he has money located domestically and abroad. Mr. Hall is seriously troubled that the government makes these allegations without having presented any evidence to this Court to substantiate its claims. Mr. Hall has previously challenged many of the government's contentions as information which is dated and inaccurate. For instance, Mr. Hall has stated that any foreign bank accounts which belonged to him are now either closed or contain funds which are seriously depleted. Rather than provide the court with current and accurate evidence, the government continues to present the court with a financial picture of Mr. Hall which is outdated and incorrect.

During the course of Mr. Hall's incarceration, his financial condition has significantly worsened. The government has made references to property in Alabama in which Mr. Hall has some ownership interest. Because Mr. Hall and associates have been unable to keep up with loan payments for this Alabama property, this property is now being foreclosed. A private residence in which Mr. Hall owns in the state of Georgia is also being foreclosed. Overall, Mr. Hall's current financial situation is considerably worse than it was at the time of his arrest and it is significantly different from the picture which has been presented by the government.

In arguing that Mr. Hall has the means to survive in a foreign country if he were to flee, the government relies on Mr. Hall's financial condition and his contacts with individuals who reside in foreign countries. As discussed above, with regard to Mr. Hall's financial status, the government has grossly misstated Mr. Hall's condition. With respect to Mr. Hall's ties to individuals in foreign

countries, the government has not offered any specific individual that it suspects would assist Mr. Hall in fleeing the United States or assist Mr. Hall in remaining a fugitive in some foreign country. The government's assertions here are purely speculative.

The government also raises a concern that the United States will not receive foreign cooperation if Mr. Hall were to flee from the United States. The country in which Mr. Hall has previously lived, and the country in which the government specifically mentions as a concern, is the country of Kuwait. The government claims that the United States has no extradition treaty with Kuwait. Therefore, the government argues, the United States faces a serious risk that it will be unable to have Mr. Hall returned here for prosecution if Mr. Hall is later found in Kuwait. Because the United States and Kuwait actually enjoy a very friendly relation, the government's argument is misleading. According to information on the United States Department of State website, relations between the United States and Kuwait are good.[6] The United States has maintained either a consulate or embassy in Kuwait since 1951. Id.. Relations and cooperation between the two countries has been improving over time, especially since the past two decades. Id.. The "strategic partnership" between the United States and Kuwait has "intensified dramatically again after Iraq's invasion of Kuwait" in 1990 and the "U.S. - Kuwaiti relationship remained strong in the post-Gulf War period." Id.. During the build up of "Operation Iraqi Freedom" and the ensuing war in Iraq, the two countries provided each other substantial support and assistance. Id.. The Department of State describes Kuwait as "a vital coalition partner" which "continues to provide generous assistance in kind to ongoing coalition operations in Iraq." Id.. The Department of State also notes that "[t]he

---

[6]See "Foreign Relations" and "U.S.-Kuwaiti Relations" sections of Background Note: Kuwait which can be found at http://www.state.gov/r/pa/ei/bgn/35876.htm

United States is currently Kuwait's largest supplier of goods and services" and that Kuwait "is an important partner in the ongoing U.S.-led campaign against international terrorism. . . ." Id.. Clearly, with such a strong and cooperative relationship between the United States and Kuwait, the government's purported concerns regarding Kuwaiti cooperation are unfounded.

Mr. Hall has previously demonstrated his strong ties to the United States and to the state of Georgia in particular. In a recent letter, Mr. Hall's sister, Andrea Hall, corroborates Mr. Hall's strong ties to Georgia.[7] She notes that Mr. Hall is a "native of Georgia" and that he is very close to his children as well as to her children.[8] Ms. Hall also describes Mr. Hall as a "responsible and trustworthy" person who will not flee if released. Mr. Hall's cousin, Ron Hall, describes Mr. Hall as "trustworthy" and "well-disciplined."[9] Mitchell Rock, a Georgia Department of Corrections employee and friend of the Hall family, states that Mr. Hall "has always been a very reliable and responsible individual." Mr. Rock further states that he believes "if Mr. Hall is given the opportunity to make bond, that he will do the right thing. He does not pose a threat to society, or will he be a flight risk."[10]

Based on the facts and circumstances of this case, the Bail Reform Act and supporting case law require that Mr. Hall be released. Mr. Hall proposes that he be released to reside in the Atlanta, Georgia metropolitan area with his cousin Ron Hall. Mr. Hall should report to the Pretrial Services

---

[7] Andrea Hall's letter is attached as Exhibit 1.

[8] One of Mr. Hall's sons lives in Georgia while the other son lives in Texas. Andrea Hall's children all reside in Georgia.

[9] A letter written by Ron Hall is attached as Exhibit 2.

[10] Mitchell Rock's letter is attached as Exhibit 3.

Agency/Probation Office for the Northern District of Georgia. Mr. Hall also suggests that the court require him to immediately seek employment upon release. Although Mr. Hall believes release on his personal recognizance is appropriate, the court has several additional conditions and monitoring options available to ensure Mr. Hall's appearance for all court proceedings.[11]

WHEREFORE, for these reasons and any such reasons that shall appear to the Court, the defendant, Terry Hall, respectfully requests that this motion be granted.

Respectfully Submitted,

A.J. KRAMER
Federal Public Defender


_____/s/_____
Tony W. Miles
Assistant Federal Public Defender
625 Indiana Avenue, N.W., #550
Washington, D.C. 20004
(202) 208-7500

---

[11] The court could order stringent reporting requirements, impose a curfew upon Mr. Hall and/or require that he be electronically monitored. As previously addressed by Mr. Hall, the Northern District of Georgia also offers Global Position Satellite (GPS) monitoring. Earlier this month, undersigned counsel spoke with a representative from the United States Probation & Pretrial Services Office in the Northern District of Georgia to ensure that the GPS option was still available. The representative advised that GPS is still a pretrial release monitoring option which is available to the court. Undersigned counsel also spoke with two Pretrial Services agents in the District of Columbia and learned that GPS monitoring has also been available in the District of Columbia since June of this year.

# EXHIBIT 1

23 July 2008

To Whom It May Concern:

I'm the sister of Terry Hall. By knowing him all of my life, I've come to realize that he is a very responsible and trustworthy person. There is nothing that he wouldn't do for his relatives, friends and associates. By doing what he can for others, he has earned much respect from his peers and family.

Terry is a native of Georgia. He has two male children; who loves him dearly. Because I trust him so, I'm very positive that he would not jeopardize his opportunity to be closer to his children by fleeing from the country or breaking the law. He has a bond that is beyond belief with his children. The children really love their father. He spends ample time with each child and I'm a witness that the kids love it. He doesn't only spend time with his children, but also with mine. Terry has been a father figure to my children and they often remind me of encouraging words that he has placed in their lives.

Like I stated above, I trust Terry enough to know that he wouldn't do anything to make his life or his family unhappy. I believe that once his is released, he'll find a job to make things better for his family and himself. Thank you for your time and attention.

Sincerely,

Andrea D. Hall

# EXHIBIT 2

23 July 2008

In regards to: Terry Hall

To Whom It May Concern:

My name is Ron Hall. I am 38 years old and I am the owner and operator of JAD Services for 8 years. I am the cousin of Terry Hall. This letter is my personal support for Terry Hall. I have known Terry since he was a young boy. In this time, he has been consistently involved in any and all activities that allow him to help and serve others. He has always been open-minded, resourceful, consistently pleasant and trustworthy, tackling all endeavors with dedication.

Terry is a person who took his disadvantaged life and made it into something purposeful. He made it out of our old neighborhood! He made it by graduating from high school and enlisting into the US Army. Terry is a take-charge person who is able to present innovative thoughts and communicate the benefits. He took charge of his life and made a difference in the lives of others around him. He is a natural wonder and it shows in his daily life.

At a personal level, Terry is a resilient, well-disciplined, and industrious person with a pleasant persona. In addition he is highly intelligent, exhibits excellent communication and people skills, and wisely manages and organizes his time and many roles.

He is the father of two boys. Whenever I'm around Terry and his children, there is a since of pride and joy that shows in the faces of them.

I highly support Terry. I support him because of his honesty and willingness to learn and educate others from his experiences. He has always been a pillar of strength to those around him, especially to me. He plays fair and works hard and is a great asset to those around him. Thank you for your time and attention.

Sincerely,

Ron Hall

# EXHIBIT 3

DATE:   July 24, 2008

RE:     **Letter of Reference**
        Mr. Terry Hall

To Whom It May Concern:

My name is Mitchell Rock and I'm employed by the Georgia Department of Corrections, where I've worked for approximately eighteen(18) years. I have known Mr. Terry Hall for over forty(40) years. He has always been a very reliable and responsible individual.

I believe, if Mr. Hall is given the opportunity to make bond, that he will do the right thing. He does not pose a threat to society, or will he be a flight risk.

Mr. Hall has two(2) sons that really respect him and need him to be a part of their lives. Please consider the livelihood of his children and give Mr. Hall the chance to continue to be a positive force force in their lives.

                                                Respectfully,

                                                *Mitchell Rock*
                                                Mitchell Rock