IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 1:07-CR-00318-EGS |
| | ) | |
| | ) | VIOLATIONS: |
| | ) | |
| | ) | Count One: 18 U.S.C. § 371 |
| v. | ) | (Bribery Conspiracy) |
| | ) | |
| | ) | Counts Two & Three: 18 U.S.C. § 201 |
| | ) | (Bribery) |
| TERRY HALL, | ) | |
| | ) | Counts Four & Five: 18 U.S.C. §§ 1343 & 1346 |
| also known as "Marcus," | ) | (Honest Services Wire Fraud) |
| | ) | |
| Defendant. | ) | Criminal Forfeiture |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | 28 U.S.C. § 2461(c) |

**FIRST SUPERSEDING INDICTMENT**

The Grand Jury charges:

SEP 04 2008

**COUNT ONE**
**18 U.S.C. § 371**
**(Bribery Conspiracy)**

<u>Background</u>

1.   In or about and between January 2004 and November 2007, both dates being approximate and inclusive, the defendant TERRY HALL operated and had an interest in several companies, including Freedom Consulting and Catering Co. ("FCC"), and Total Government Allegiance ("TGA"), which had contracts with the U.S. Department of Defense and its components ("DoD") in Kuwait and elsewhere.

2.   In or about and between 2005 and 2006, both dates being approximate and inclusive, the companies that the defendant TERRY HALL operated and had an interest in received approximately $17,250,000 from the DoD. DoD paid money to HALL's companies in

Case related to CR07-318-EGS

connection with contracts and blanket purchase agreements ("BPAs") for, among other things, bottled water and security fencing for the DoD in Kuwait and Iraq. BPAs are contracts in which the DoD agrees to pay a contractor a specified price for supplies and may, on an ongoing basis, order quantities of such supplies as the DoD requires; the contractor is then obligated to deliver the requested supplies at the agreed-upon price. The term for such a request by the DoD is a "call."

3. In or about and between October 2004 and December 2005, both dates being approximate and inclusive, a co-conspirator ("CC-1") was a Major in the U.S. Army deployed as a contracting specialist to Camp Arifjan in Kuwait.

4. At all times relevant to this Indictment, CC-2 was the wife of CC-1. At the behest of the defendant TERRY HALL and CC-1, CC-2 arranged for an entity named EGP Business Solutions, Inc. ("EGP") to be incorporated in the State of Louisiana. Additionally, bank accounts were established in the Cayman Islands, the United States, and elsewhere in CC-2's name and in the name of EGP, through which CC-1 and CC-2 received bribe money from HALL and others.

5. In or about and between October 2004 and December 2005, both dates being approximate and inclusive, while stationed in Kuwait, CC-1 arranged for a BPA to be awarded to FCC to deliver bottled water in Kuwait and Iraq, and thereafter CC-1 arranged for calls to be issued under that BPA, as a result of which DoD paid FCC approximately $6,832,732.50. CC-1 also arranged for the DoD to award a contract to FCC to construct a security fence at Camp Arifjan, for which the DoD paid FCC approximately $750,000. In exchange for these and other official acts CC-1 performed, CC-1 and CC-2 received in excess of $1,000,000 in money and jewelry from the defendant TERRY HALL and others.

6. From in or about September 2005 until in or about August 2006, both dates being approximate and inclusive, co-conspirator James Momon was a Major in the U.S. Army deployed as a contracting specialist to Camp Arifjan in Kuwait.

7. In or about and between September 2005 and August 2006, both dates being approximate and inclusive, while stationed in Kuwait, co-conspirator James Momon arranged for calls to be issued to Total Government Allegiance under the bottled water BPA referenced in paragraph 5 above, as a result of which DoD paid TGA approximately $6,431,288.90. In exchange for these and other official acts, Momon received at least $200,000 from the defendant TERRY HALL and others.

8. To facilitate his business and related criminal activities, the defendant TERRY HALL arranged for co-conspirators and others to set up and manage bank accounts on his behalf at various banks in Kuwait, the United States, and elsewhere. In particular, accounts were established at the National Bank of Kuwait ("NBK"), the Bank of the Philippine Islands, the First National Bank of Texas ("FNBT"), and the Bank of America ("BoA"). The entities in whose names HALL, his co-conspirators and others established and maintained bank accounts included Bluebridge International General Trading and Contracting Co. ("Bluebridge"), Trimedpro Project Management ("Trimedpro"), BBI BR Freedom Consulting ("BBI "), U.S. Eagles Logistics, FCC, and TGA. At HALL's direction, HALL's co-conspirators and others conducted financial transactions, including wire transfers, in these accounts and, at times, provided HALL with updates on the status of the accounts.

**The Conspiracy**

9. In or about and between 2004 and November 2007, both dates being approximate

and inclusive, within Kuwait, the Cayman Islands, and elsewhere, the defendant

**TERRY HALL,**

together with others, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, as follows:

    (a)    directly and indirectly, to corruptly give, offer, and promise a thing of value to a public official and another person with intent to influence an official act, in violation of Title 18, United States Code, Section 201(b)(1)(A); and

    (b)    directly and indirectly, to corruptly demand, seek, receive, accept, and agree to receive and accept a thing of value personally and for another person and entity, in return for being influenced in the performance of an official act, in violation of Title 18, United States Code, Section 201(b)(2)(A).

### Objects of the Conspiracy

10.     It was a part and object of the conspiracy for the defendant TERRY HALL to enrich himself through corrupt means, by giving, offering and promising things of value to certain public officials and others with the intent to influence official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

11.     It was further a part and object of the conspiracy for certain U.S. Army officials to enrich themselves and others through corrupt means, by demanding, seeking, receiving, and agreeing to receive and accept things of value from the defendant TERRY HALL and others in return for being influenced in the performance of official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

### Manner and Means of the Conspiracy

4

12. Among the manner and means used by the defendant TERRY HALL and others to achieve the unlawful objects of the conspiracy were the following:

a. The defendant TERRY HALL would and did promise certain U.S. Army officials, including CC-1, co-conspirator James Momon, and others, sums of money and other valuable items in exchange for official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

b. Certain U.S. Army officials, including CC-1, co-conspirator James Momon, and others, would and did take official action to benefit the defendant TERRY HALL, companies HALL operated and in which HALL had an interest, and others, including arranging for the award of contracts and BPAs and arranging for the issuance of calls for bottled water under BPAs.

c. The defendant TERRY HALL and others would and did arrange for companies and bank accounts to be established in the Cayman Islands, the Philippines, the United Arab Emirates, and elsewhere in the names of third parties and entities, for the purpose of paying bribes to certain U.S. Army officials, including CC-1, co-conspirator James Momon and others.

d. The defendant TERRY HALL would and did pay bribes to certain U.S. Army officials and others, including CC-1, CC-2, and co-conspirator James Momon, in the form of cash and through wire transfers into bank accounts controlled by or established for the benefit of the U.S. Army officials and others.

e. The defendant TERRY HALL and others prepared and executed documents purporting to be consulting agreements and contracts for the purpose of creating the

appearance that certain U.S. Army officials and others had legitimately earned the bribe payments.

  f.  The defendant TERRY HALL would and did designate co-conspirators and others to set up and operate bank accounts on his behalf in Kuwait, the United States and elsewhere in an effort to conceal his interest in those bank accounts.

## Overt Acts

  13.  In furtherance of the conspiracy and in order to accomplish its objects, the defendant TERRY HALL and his co-conspirators committed the following overt acts in Kuwait, the Cayman Islands and elsewhere:

  a.  In or about March 2005, in Kuwait and elsewhere, the defendant TERRY HALL caused a document purporting to be a consulting agreement to be prepared between "Freedom Catering Co." and CC-2 in her maiden name, whereby CC-2 would receive $100,000 for providing "business development services."

  b.  On or about March 9, 2005, in Kuwait and elsewhere, CC-1 informed CC-2, in substance, that she would be receiving some paperwork with her maiden name on it. CC-1 directed CC-2 to sign the paperwork and then put it in the mail. CC-1 informed CC-2 that he "can't have anyone paying me as I am in the military so I had them put everything in your maiden name."

  c.  On or about April 7, 2005, CC-2, at the behest of the defendant TERRY HALL and CC-1, caused a bank account to be opened in the name of an entity called EGP Business Solutions, Inc. at AmSouth Bank, account no.     , with a deposit of approximately $100 (the "EGP account").

     d.     On or about May 4, 2005, in Kuwait, CC-1 arranged a call for bottled water from FCC. As a result of this call, DoD paid FCC approximately $1,031.200.00.

     e.     In or about July 2005, in the Cayman Islands, CC-2, at the behest of the defendant TERRY HALL and CC-1, caused two bank accounts to be opened in her own name at Cayman National Bank, including account number 022-15898 ("CC-2's Cayman account").

     f.     On or about July 31, 2005, in Kuwait, CC-1 arranged a call for bottled water from FCC. As a result of this call, DoD paid FCC approximately $3,682,597.61.

     g.     On or about September 1, 2005, in Kuwait, CC-1 arranged a call for bottled water from FCC. As a result of this call, DoD paid FCC approximately $1,865,698.00.

     h.     On or about September 10, 2005, in Kuwait, CC-1 arranged a call for bottled water from FCC. As a result of this call, DoD paid FCC approximately $182,988.99.

     i.     On or about September 19, 2005, the defendant TERRY HALL caused approximately $75,000 to be wired from an account at BoA in the name of Freedom Consulting & Catering Co., account no.            the ("FCC account"), to the EGP bank account.

     j.     On or about September 23, 2005, in Kuwait and elsewhere, CC-1 arranged a call for bottled water from FCC. As a result of this call, DoD paid FCC approximately $70,248.00.

     k.     On or about September 26, 2005, the defendant TERRY HALL caused approximately $112,000 to be wired from the FCC account to the EGP bank account.

     l.     On or about September 27, 2005, in Kuwait and elsewhere, the defendant TERRY HALL caused one of his employees to pick up approximately $200,000 from a company associated with an individual who operated and had an interest in a company that had a bottled

water contract with the DoD in Kuwait.

  m. On or about September 27, 2005, in Kuwait, the defendant TERRY HALL caused approximately $200,000 in cash to be deposited into an account at NBK in the name of Bluebridge Intl Branch US Eagles Services Project Management WLL, account no.

  (the "BBI account").

  n. On or about December 15, 2005, in Kuwait, the defendant TERRY HALL caused approximately $44,970 to be wired from an account at NBK in the name of Bluebridge International General Trading, account no.  (the "Bluebridge account") to the EGP account.

  o. On or about January 3, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from FCC. As a result of this call, DoD paid TGA approximately $362,942.61.

  p. On or about January 4, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $94,970 to be wired from an account at NBK in the name of Trimedpro Project Management WLL, account no.  (the "Trimedpro account") to the EGP account.

  q. On or about January 27, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from TGA. As a result of this call, DoD paid TGA approximately $642,053.75.

  r. On or about January 31, 2006, defendant TERRY HALL caused an entity named Omega Construction & Support Services Corp. to be incorporated in the State of Delaware in order to funnel bribe payments to HALL's co-conspirator James Momon.

s.  On or about February 6, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from TGA. As a result of this call, DoD paid TGA approximately $1,293,626.28.

t.  On or about February 7, 2006, in the Philippines and elsewhere, the defendant TERRY HALL caused two bank accounts to be established in the name of a co-conspirator ("CC-3") at the Bank of the Philippines Islands in order to make bribe payments to co-conspirator James Momon and another U.S. Army official.

u.  On or about February 11, 2006, in Kuwait and elsewhere, the defendant TERRY HALL, using coded language, provided co-conspirator James Momon and another U.S. Army official with the SWIFT code for the Bank of the Philippines Islands.

v.  On or about March 10, 2006, in Kuwait and elsewhere, the defendant TERRY HALL provided a password for an account at the Bank of the Philippines Islands to one of his employees and directed this employee to provide the password to co-conspirator James Momon.

w.  On or about March 21, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $41,970 to be wired from the BBI account to the EGP account.

x.  On or about March 26, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from TGA. As a result of this call, DoD paid TGA approximately $2,492,054.50.

y.  On or about March 23, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $30,970 to be wired from the BBI account to the EGP

account.

z. On or about March 27, 2006, in Atlanta, Georgia, the defendant TERRY HALL delivered a bribe payment of approximately $100,000 in cash to co-conspirator James Momon.

aa. On or about March 29, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $109,970 to be wired from the BBI account to the bank account HALL had caused to be established in the Philippines for co-conspirator James Momon.

bb. On or about March 29, 2006, CC-2 caused an invoice to be prepared on behalf of "EGP Business Solutions" to FCC for approximately $300,000 for purported consulting services provided during the prior 3-month period.

cc. On or about April 26, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $249,970 to be wired from the Bluebridge account to CC-2's Cayman account.

dd. On or about April 27, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $49,970 to be wired from the BBI account to CC-2's Cayman account.

ee. On or about May 5, 2006, in Kuwait, co-conspirator James Momon arranged a call ordering bottled water from TGA. As a result of this call, DoD paid TGA approximately $990,611.96.

ff. On or about May 25, 2006, in Kuwait and elsewhere, the defendant TERRY HALL caused approximately $255,970 to be wired from the Trimedpro account to the EGP account.

gg. On or about May 30, 2006, co-conspirator James Momon arranged a call for bottled water from TGA. As a result of this call, DoD paid TGA approximately $647,212.81.

hh. In or about August 2006, in Kuwait, the defendant TERRY HALL delivered a bribe payment of approximately $100,000 in cash to co-conspirator James Momon.

(Title 18, United States Code; Section 371)

## COUNT TWO
## 18 U.S.C. § 201(b)(1)(A)
## (Bribery)

14. The allegations contained in paragraphs 1-5, 8, 13a-13n, 13p, 13w, 13x, 13y, 13bb-13dd, and 13ff of this Indictment are repeated and realleged as though fully set forth herein.

15. In or about and between October 2004 and July 2006, both dates being approximate and inclusive, in Kuwait and elsewhere, the defendant

## TERRY HALL,

directly and indirectly, corruptly did give, offer, and promise a thing of value to a public official and another person to influence an official act; that is, HALL offered and paid money and other things of value to CC-1, a U.S. Army officer assigned to Camp Arifjan, Kuwait, and CC-2, in order to influence CC-1's official acts, including the award of contracts and BPAs and calls on BPAs for bottled water.

(Title 18, United States Code, Sections 201(b)(1)(A) and 2)

## COUNT THREE
## 18 U.S.C. § 201(b)(1)(A)
## (Bribery)

16. The allegations contained in paragraphs 1, 2, 6-8, 13o, 13q-13v, 13x, 13z, 13aa,

13ee, and 13hh of this Indictment are repeated and realleged as though fully set forth herein.

17. In or about and between September 2005 and August 2006, both dates being approximate and inclusive, in Kuwait and elsewhere, the defendant

**TERRY HALL,**

directly and indirectly, corruptly did give, offer, and promise a thing of value to a public official to influence an official act; that is, HALL offered and paid money and other things of value to James Momon, a U.S. Army officer assigned to Camp Arifjan, Kuwait, in order to influence Momon's official acts, including calls on BPAs for bottled water.

(Title 18, United States Code, Sections 201(b)(1)(A) and 2)

## COUNTS FOUR AND FIVE
## 18 U.S.C. §§ 1343, 1346
## (Honest Services Wire Fraud)

18. The allegations contained in paragraphs 1-8 of this Indictment are repeated and realleged as though fully set forth herein.

19. In or about and between October 2004 and July 2006, both dates being approximate and inclusive, in Kuwait and elsewhere, the defendant

**TERRY HALL,**

together with others, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and deprive the United States Government and DoD of their right to the honest and faithful services of CC-1 and co-conspirator James Momon, as Army Majors and Army contracting specialists, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and concealment.

<u>Purpose of the Scheme</u>

20. It was a purpose of the scheme and artifice to defraud for the defendant TERRY HALL to promise certain U.S. Army officials, including CC-1, co-conspirator James Momon, and others, sums of money and other valuable items to influence the award and payment of contracts and BPAs and the issuance of calls under BPAs.

21. It was further a purpose of the scheme and artifice to defraud for certain U.S. Army officials to enrich themselves through corrupt means, by demanding, seeking, receiving, and agreeing to receive and accept things of value from the defendant TERRY HALL and others in return for being influenced in the performance of official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

### Manner and Means of the Scheme

22. It was a part of the scheme and artifice to defraud that

    a. The defendant TERRY HALL would promise certain U.S. Army officials, including CC-1, co-conspirator James Momon, and others, sums of money and other valuable items in exchange for official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

    b. Certain U.S. Army officials, including CC-1, co-conspirator James Momon, and others, would take official action to benefit the defendant TERRY HALL, companies HALL operated and in which HALL had an interest, and others, including arranging for the award of contracts and BPAs and arranging for the issuance of calls for bottled water under BPAs.

    c. The defendant TERRY HALL and others would arrange for companies and bank accounts to be established in the Cayman Islands, the Philippines, the United Arab

Emirates, and elsewhere in the names of third parties and entities, for the purpose of paying bribes to certain U.S. Army officials, including CC-1, co-conspirator James Momon and others.

    d.    The defendant TERRY HALL would pay bribes to certain U.S. Army officials and others, including CC-1, CC-2, and co-conspirator James Momon, in the form of cash and through wire transfers into bank accounts controlled by or established for the benefit of the U.S. Army officials and others.

    e.    The defendant TERRY HALL and others prepared and executed documents purporting to be consulting agreements and contracts for the purpose of creating the appearance that certain U.S. Army officials and others had legitimately earned the bribe payments.

    f.    The defendant TERRY HALL designated co-conspirators and others to set up and operate bank accounts on his behalf in Kuwait, the United States and elsewhere in an effort to conceal his interest in those bank accounts.

<u>Execution of the Scheme</u>

23.    On or about the date of each count listed below, in Kuwait and elsewhere, the defendant TERRY HALL and others, for the purpose of executing the above-described scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, the following writings, signals, and sounds:

| <u>Count</u> | <u>Date</u> | <u>Wire Transmission</u> |
|---|---|---|
| Four | March 29, 2006 | Wire transfer of $109,970 from account no. _____ in the name of Bluebridge Intl Branch US Eagles Services Project Management WLL at the National Bank of Kuwait in Kuwait, to account no. _____ in the name of Finbar Charles at the Bank of the Philippine Islands in the Philippines |

| Five | April 26, 2006 | Wire transfer of $249,970 from account no. in the name of Bluebridge International General Trading at the National Bank of Kuwait in Kuwait, to account number 022-15898 in the name of CC-2 at Cayman National Bank in the Cayman Islands |

(Title 18, United States Code, Sections 1343, 1346 and 2)

## CRIMINAL FORFEITURE

24. Paragraphs 1-8, 13a-13gg, and 14-23 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

25. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendant TERRY HALL, once convicted of Counts Two, Three, Four or Five, shall forfeit to the United States the following:

   a. All right, title, and interest in any and all property involved in the violations of Title 18, United States Code, Sections 201, 1343 and 1346 for which the defendant is convicted, and all property traceable to such property, including: (1) all money or other property that was the subject of each violation of Section 201; (2) all commissions, fees, and other property constituting proceeds obtained as a result of those violations; and (3) all property used in any manner or part to commit or facilitate the commission of those violations.

   b. A sum of money equal to the total amount of money involved in each offense in violation of Title 18, United States Code, Section 201, as charged in Counts 2 and 3, an each offense in violation of Title 18, United States Code, Section 1343 and 1346, as charged in Counts 4 and 5, for which the defendant is convicted.

26. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the amount described in the foregoing paragraphs, if, by any act or omission of the defendant, the property described in such paragraphs, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(Criminal Forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a), Title 28, United States Code, Section 2461.)

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY


WILLIAM M. WELCH II
Chief, Public Integrity Section
Criminal Division

_Peter C. Sprung_
Peter C. Sprung
Deborah Mayer
Trial Attorneys